<div style="display:flex;justify-content:space-between">
<div>James C Brown*<br>*licensed in Georgia</div>
<div style="text-align:center"><strong>PLOEG & BROWN, P.C.</strong></div>
<div>Johannes M Ploeg*<br>*licensed in Georgia &<br>California</div>
</div>

ALL CORRESPONDANCE SEND TO:

1557 Buford Drive #491388
LAWRENCEVILLE, GA 30049

OFFICE: (770) 277-1400 | FAX: (470) 268-5620
WEB: www.ploegandbrown.com



EXHIBIT 4

November 30th, 2023

Jenkins Estates LTD
400 76th St SW
Suite 14
Byron Center, MI 49315

Atten: David Jenkins, CEO
       Jodie Beardsly, CFO

Dear David & Jodie,

I would like to take this opportunity to address our major concerns regarding the management of our residential home construction ("Project") at 2495 S Cherry Tree Lane, Suttons Bay, MI 49682. In recent weeks we have experienced major disruptions to the build plan due to the total mismanagement of the funds provided to you which were supposed to be held in Trust for the purpose of payment to the suppliers and subcontractors on this project. We have never received any lien waivers per Section 9 of the contract, but rather, we have been inundated with phone calls and letters from suppliers and subcontractors that were not paid. As a result, the framers walked off the job, the excavator refused to complete the changes required on the soil erosion permit, we are missing windows and doors that were never ordered, the sanitation inspector has been waiting two months for answers on the septic field location, the survey company called for payment on the survey completed over one year ago, and the house has been left exposed to the elements for weeks, which can cause wood rot and mold.

We have been asking for updated build schedules for weeks but only received build plans that were fictitious because the planned work was never going to happen. When we contacted the subcontractors that were supposed to perform the work, each of them stated that either they do not know anything about coming to work, have been calling you do find out if they should work but never received a response, or they told us they won't start working until they have been paid for this job and/or other jobs they performed for you.

There are hundreds of thousands of dollars that are not accounted for, and I suspect that these funds have been converted to other projects and/or converted to your own personal use. All our efforts to get transparency and accountability of the funds in Trust have been met with excuses. At this point, we cannot draw any other conclusion than you misappropriated our money and are now unable to continue this project. Below is a fractural summary of events that support our allegations.

## FACTUAL SUMMARY

**05/22/2023**
Entered into Agreement. Wired Jenkins Estates $235,625.68 per contract (20% down). Downpayment was <u>supposed to be used to order materials such as lumber</u>. However, Deleeuw Lumber was never paid months after delivering the lumber, and has demanded payment of $174,913.96.

**06/26/2023**
E-Mail sent to David expressing concerns over why so much of the project must be paid in advance.

[Mitch] "Now if I look at the build schedule on Builder Trend, I see that "footings and foundation walls" will start end of next month. That would mean another $213,675.81 will be due in just a few weeks, bringing the total paid on the home to <u>$753,340.55 in the first month</u> after cutting down the first tree.

You mentioned that you "sent invoice two as we need to get the materials purchased for the project asap". This is not really spelled out in the contract as part of phase ii, except maybe under "additional project materials"?

If paying 45% of the total project cost up front is to purchase materials now for installation later, this was not communicated to us or understood at the outset. While this may make economic sense, we have to have more transparency and lock down expectations. How can we get this done?

Here, you misrepresented to us that you needed a significant amount of the funds up front to pay for materials, when in fact, you never used the money to pay for materials as evidenced by the suppliers who have told us they were never paid. Should it be discovered that you converted these funds to your own use, that would be Larceny by False Pretenses.

**06/27/2023**
Wired Jenkins Estates $152,019.53 per contract

**07/31/2023**
Wired Jenkins Estates $140,019.53 per contract
(Final payment of Phase ii covering tree removal, excavation and septic*, windows, "additional materials")
*Excavation completed by Busschers Septic Tank & Excavating Service, Inc but were not paid. Septic was never installed.

**08/09/2023**
Wired Jenkins Estates $65,000.00 per contract

**08/14/2023**
Wired Jenkins Estates $27,999.69 per contract

**10/05/2023**
Wired Jenkins Estates $62,194.49 per contract

(Final payment of Phase iii covering footings and foundation walls, flatwork, framing labor, roofing, well*)
- foundation walls were poured by &R Flatwork & Poured Walls stating that they were not paid $52,907.00.
- Framing labor was performed by Tru-built who left the job due to non-payment, only to return to install windows after Mitch and Hien paid off the balance due.
- Flatwork was never completed. (56 days after final payment)
- Roofing was never completed. (56 days after final payment)
- Well was never installed. (56 days after final payment)

**10/11/2023**
Wired Jenkins Estates $112,842.45 per contract
(50% of phase iv less cabinetry, includes siding installation, electrical, plumbing, HVAC, insulation, remaining project management and overhead)*
*None of phase iv has been started 49 days after payment made (except for HVAC which was started but done poorly and not to the plans).

**10/17/2023**
Received phone call from Deleeuw Lumber stating they had not been paid. Outstanding balance $174,913.96

**10/26/2023**
E-mail sent to Jodie Beardsley from Herman Hanko (Tru-built) stating he "did not receive a check yesterday for most recent billing. We can send a crew up next week if we can get payed up in full today for everything owed."

**11/02/2023**
E-mail sent to Jodie Beardsley & David Jenkins from Herman Hanko (Tru-built): "Was the check sent out for Ploeg yet? I have heard nothing from you, David since a week ago."

**11/06/2023**
Sent wire transfer of $40,257.80 to Herman Hanko (Tru-built) for past due invoices to Jenkins Estates so that Tru-built will install windows.

**11/07/2023**
Received letter from attorney representing Busschers Septic Tank & Excavating Service, Inc. regarding non-payment of excavation.

**11/07/2023**
LP Fascia/Soffit scheduled – Not started – was supposed to be done by Tru-built but they were pulled of the job due to non-payment of past due invoices.

**11/09/2023**
Per our phone call, you mentioned that Casta Roofing would do the roof because they were less cost and could do both metal and asphalt. Would you please send me the quotes from Trubuilt and Casta for comparison. At this stage, Trubuilt already installed the sheeting, and have the shingles on site and

has staged the shingles. Trubuilt has time, money, and materials, already into the roof for which they will want to be paid. Any savings realized by switching roofers at this point will be offset by these costs.

I don't want to switch to another roofer this late in the process. Trubuilt has done a great job so far and I trust their workmanship. We had bad experiences with a roofer in the past that did not know how to install architectural shingles and they literally fell off the roof. We had to pay for another company to put another whole new roof on. That said, with winter coming fast, we need to get the house enclosed ASAP and we do not want two roofers working on the same roof because if something goes wrong they will blame each other. Trubuilt has already started the roof so I want them to finish it.

Sorry David, I know you are trying to save money but we need to keep Trubuilt on the job until the house in totally enclosed for winter.

**11/09/2023**

Phone conference with David followed up with meeting minutes: Main points:

The home is experiencing weather damage because it has been open to the elements longer than it should be.

We need the windows in place and the roof completed.
The roof cannot be completed because the front door framing needs to be done and the dormer over the front door needs to be made.
The framing cannot happen until the framer gets architectural drawings.

West Michigan Lumber will be providing the exterior doors next week  (This never happened)

Plumbing in basement to start next week. (This never happened)

B&Z to commence the drilling of the well. (This never happened)

Flat work to follow by Dec 1st (This never happened)

Mitch and Hien requested that realistic build schedules be put into Builder Trend rather that put in schedules that cannot be met and then changed/updated every week. For example, the schedule from only a week ago has roofing to commence on Nov 15th

David committed to set up Builder Trend to alert us in the event of any change to the schedule. (This never happened)

**11/13/2023**
Plumbing Ground scheduled – Not started

**11/13/2023**
Plumbing Rough In scheduled – Not started

**11/13/2023**
Well Install scheduled – Not started

**11/15/2023**
Roofing scheduled – Not started

**11/20/2023**
Basement Slab scheduled – Not started

**11/20/2023**
Garage Slab Pour scheduled – Not started

**11/27/2023**
Electrical Rough in scheduled – Not started

**11/27/2023**
Received letter from A&R Flatwork & Poured Walls stating that they were not paid $52,907.00 for the foundation. The letter states "I have tried repeatedly to contact David. He will not return my phone calls or texts."

**11/27/2023**
Called Juan at Kastas Roofing to confirm David's comment on November 9th, stating that he choose Kastas to do the roof because they "could do both metal and asphalt." Juan informed me that they do not do metal roofs and would not agree to attempt it. They stated that they told David this already and that they have been calling and texting David for three weeks to find out what is going on with the roof, as to whether they are doing the asphalt portion or not. No response.

**11/27/2023**
E-Mail sent to David:
Per our discussion, you agreed to refund us for these payments.

The total amount prepaid is
Prepaid   $218,709.49

The breakdown is as follows:

| Title | Phase | Owner Price | Amount Billed | Paid | Still to Pay | Total | Complete |
|---|---|---|---|---|---|---|---|
| Well | Phase iii | $21,720.00 | $10,860.00 | $10,860.00 | $10,860.00 | $21,720.00 | 0% |
| Electrical | Phase iv | $54,000.00 | $27,000.00 | $27,000.00 | $27,000.00 | $54,000.00 | 0% |

| Insulation | Phase iv | $26,880.00 | $13,440.00 | $13,440.00 | $13,440.00 | $26,880.00 | 0% |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Plumbing | Phase iv | $55,138.61 | $27,569.31 | $27,569.31 | $27,569.31 | $55,138.62 | 0% |
| Siding | Phase iv | $139,862.40 | $69,931.20 | $69,931.20 | $69,931.20 | $139,862.40 | 0% |
| Drywall | Phase v | $58,800.00 | $29,400.00 | $29,400.00 | $29,400.00 | $58,800.00 | 0% |
| Flooring | Phase v | $42,015.07 | $21,007.54 | $21,007.54 | $21,007.54 | $42,015.08 | 0% |
| Interior Trim | Phase v | $16,968.00 | $8,484.00 | $8,484.00 | $8,484.00 | $16,968.00 | 0% |
| Tile | Phase v | $15,739.20 | $11,017.44 | $11,017.44 | $4,721.76 | $15,739.20 | 0% |

If you review the attached spreadsheet, you will see line items in pink. Those amounts reflect payments for phases that are partially completed, and other lines are 100% completed. We will need partial and/or full waiver and releases from the subs for these amounts. Please note that we have paid you almost $800,000.00 for this project so you <u>must</u> have funds available.

Please send a check for $218,709.49 <u>**Overnight**</u> to our house:

## BREACH OF CONTRACT

David, at this time, it is our position that you are in breach of contract.

> **Under Section 9. Application for Payment section c**. "Builder will timely pay all subcontractors and suppliers and shall provide Owner with full unconditional lien waivers from all subcontractors."

As outlined above, several subcontractors and suppliers have not been paid and you have yet to provide us a single lien waiver. The amount of money owed to supplies (that we know about) is in excess of $340,000.00. Therefore, you are in breach of the contract under Section 9.

> **Under Section 13. Termination of Contract.** "If Builder fails to advance the construction of the Project in accordance with the completion date, …or is otherwise in default, Owner may be written notice of the alleged default to Builder, allow Builder thirty (30) days to cure any default.
>
> If the default is not cured to the reasonable satisfaction of Owner, Owner may, by written notice, terminate Builder's right to perform any or all portions of the Work."

Please consider this our <u>written notice of the alleged default</u>. We will allow you thirty (30) days to cure the default. To cure the default, you must perform the following under the terms of the contract:
1) *Timely pay all subcontractors and suppliers and shall provide Owner with full unconditional lien waivers from all subcontractors."*
2) *Cure the delays in construction by completing and/or commencing all work related to payments made to you for phases i to vi.*

Failure to cure this default will result in the termination of your rights to perform any work on this project.

### RELEVANT STATUTES – BUILDING CONTRACT FUND Act 259 of 1931

**570.151 Building contract fund; status as a trust fund. Sec. 1.** In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a **trust fund,** for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes

**570.152 Building contract fund; fraudulent detention or use by contractor or subcontractor, penalty. Sec. 2**. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to **first pay laborers, subcontractors and materialmen**, engaged by him to perform labor or furnish material for the specific improvement, shall be **guilty of a felony** in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

**570.153 Building contract fund; evidence of fraudulent detention or use. Sec. 3**. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

Please review the above statutes carefully. As of today, you have not provided any proof of payment and/or lien waivers to any of the suppliers and/or subcontractors that have provided materials and/or labor on this project. Significant delays on this project are directly related to these non-payments. As you know, we have paid almost $800,000.00 to you and an additional $40,000.00 directly to subcontractors. These funds were supposed to be held in Trust and used to **first pay laborers, subcontractors and materialmen.** Per the Building Contract Fund Act. There is direct evidence that shows at least $300,000.00 of this money was not paid to the materialmen, and in addition there is over $200,000.00 of the money you held in Trust on this project for work that has not been performed. The project is now delayed by almost two months.

Sincerely,

_____
Johannes Ploeg