UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHANNES M. PLOEG, et al.,

      Plaintiffs,                                  Hon. Paul L. Maloney

v.                                              Case No. 1:24-cv-89

JENKINS ESTATES LTD and
DAVID JENKINS,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

Invoking this Court's diversity jurisdiction, pro se Plaintiffs Johannes and Hien Dau Ploeg have sued Defendants Jenkins Estates LTD (JEL) and David Jenkins, alleging state-law claims of breach of contract (Count I), violation of the Michigan Builders Trust Fund Act (MBTFA), Mich. Comp. Laws § 570.152 (Count II), fraud (Count III), personal liability of David Jenkins (Count IV), and statutory conversion (Count V), in connection with the parties' agreement for construction of a house on Lake Michigan. Presently before me is Defendants' Partial Motion to Dismiss Counts I, III, IV, and V pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1] (ECF No. 31.) The motion is fully briefed and ready for decision.

---

[1] Defendants also cite 28 U.S.C. § 1915(e)(2). That statute, which applies to *in forma pauperis* proceedings, is inapplicable here. While Plaintiffs are proceeding pro se, they paid the filing fee and thus are not proceeding *in forma pauperis*. In fact, it is well established in the Sixth Circuit that a court may not dismiss and an action pursuant to Section 1915(e)(2) if the plaintiff pays the filing fee. *See Clark v. United States*, 74 F. App'x 561, 562 (6th Cir. 2003) ("Clark, however, did not proceed IFP, but paid the filing fee. Generally, if a plaintiff pays the filing fee, a complaint is not subject to dismissal without notice to the plaintiff and an opportunity to amend.") (citing *Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999)).

For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART.**[2]

## I. Background

### A. Factual Allegations

The Ploegs reside in Georgia and wished to construct a house on a lot on Lake Michigan in Suttons Bay, Michigan. (ECF No. 1 at PageID.3.) In October 2022, the Ploegs contacted Jenkins, the CEO of JEL, a builder of custom homes in Michigan. Jenkins introduced the Ploegs to an architectural firm, which they retained to design their custom lake home—a structure with a 3,100 square foot main floor, a 2,800 square foot walk-out basement, and a 1,100 square foot garage. (*Id.* at PageID.3–4.)

On May 22, 2023, the parties entered into an agreement (the Agreement) to build the home for a fixed cost of $1,178,128.38 pursuant to the architect's plans and specifications. Pursuant to the Agreement, the Ploegs wired JEL $235,625.48 (phase one deposit of 20 percent of the contract price). In accordance with the Agreement, Jenkins assured the Ploegs that full unconditional waivers and releases would be obtained from subcontractors and suppliers. (*Id.* at PageID.4.)

Although the Ploegs paid Defendants substantial sums under the Agreement for building materials and labor, Defendants failed to order certain building materials and failed to use the Ploegs' funds to pay for materials that they had actually ordered and to pay subcontractors for work they had performed. As a result, several subcontractors refused to perform any further work, and at least one filed a lien on the property based on non-payment for work that had been

---

[2] Although Defendants have requested oral argument, I deny the request because the parties' briefs adequately address the issues raised, and oral argument would not aid the decisional process.

performed. The Ploegs were thus forced to pay several subcontractors the unpaid balance due for work already performed so that they would complete their remaining work. (*Id.* at PageID.4–9.)

On November 27, 2023, the Ploegs demanded that Defendants return $218,709.49 of construction funds because Jenkins had misrepresented that the funds were needed to order materials and pay subcontractors. The Ploegs allege that Defendants never used those funds for materials or to hire subcontractors, nor did they return them. (*Id.* at PageID.9–10.) On November 30, 2023, the Ploegs sent Defendants a "30-Day Demand to Cure," but Defendants failed to cure the breaches, leaving the Ploegs to mitigate the damage to the house by hiring contractors at their own expense to dry the house after inclement weather and to complete other work. The Ploegs allege that $786,651.04 in Builder Trust Funds are missing because Defendants diverted them to other projects or for their own use. (*Id.* at PageID.10.)

### B.  Procedural History

The Ploegs initiated this action on January 30, 2024. On or about March 22, 2024, Jenkins was charged in a criminal proceeding with two counts, false pretenses of $100,000 or more and contractor-fraudulent use of building contract funds, in the 84th District Court for Grand Traverse County. (ECF No. 22 at PageID.394.) In light of that proceeding, I granted the parties' stipulation to stay this action pending completion of Jenkins's criminal proceeding. (ECF No. 23.) Subsequently, Jenkins entered into a plea agreement, in which he agreed to pay full restitution to the Ploegs. (ECF No. 25.) On October 15, 2024, I held a status conference, lifted the stay, and directed Defendants to file their answer or otherwise respond to the complaint within 28 days. (ECF Nos. 28 and 29.) In accordance with the October 15, 2024 Order, Defendants filed the instant motion on November 11, 2021.

## II. Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is

limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, it is well established that in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Discussion

#### A.    Breach of Contract (Count I)

In Count I, the Ploegs allege that they entered into a contract with Defendants, pursuant to which Defendants agreed to build a home upon the Ploegs' land for a "'fixed' contract price of $1,178,128.38 payable 20% down to start, then paid according to 'phases of completion.'" (ECF No. 1 at PageID.11.) The Ploegs further allege that Defendants "agreed to 'timely pay all subcontractors and suppliers and shall provide Owner with full unconditional lien waivers from all subcontractors.'" (*Id.*) They further allege that Defendants breached the contract by using the construction funds for purposes other than paying for materials and labor for construction of the house and by failing to provide full, unconditional lien waivers. (*Id.*)

Defendants request dismissal of the breach of contract claim against Jenkins because he was not a party to the Agreement. Rather, they assert that the Ploegs and JEL were the only parties. As support, Defendants submit a Residential Custom Build Agreement between the Ploegs and JEL dated May 20, 2023, for the construction of a custom building on the Ploegs' property in Suttons Bay, Michigan, for a total contract price of $1,178,128.38. (ECF No. 32-1.) Defendants contend that, because the Ploegs referenced the Residential Custom Build Agreement in their

5

complaint, and it is central to their claims, the Court may consider it in deciding their Rule 12(b)(6) motion. (ECF No. 32 at PageID.427–28 & 427 n.1)

The Ploegs do not deny that they entered into a contract with JEL to build a house on their property. They argue, however, that they alleged in their complaint only that they "'entered into a contract' with 'Defendants,'" and this allegation must be taken as true for purposes of Rule 12(b)(6). The Ploegs further argue that, contrary to Defendants' argument, their complaint does not refer to the Residential Custom Build Agreement that Defendants attach to their motion, and they note that while that document is dated May 20, 2023, they alleged in the complaint that the parties entered into the Agreement on May 22, 2023. Finally, the Ploegs contend that the Residential Custom Build Agreement is not central to their claims because it is the MBTFA violation that is, in fact, central to their claims. (ECF No. 37 at PageID.557–59.)

The Ploegs' arguments are unpersuasive. While it is true that they did not specifically mention the Residential Custom Build Agreement by name in their complaint, the Ploegs indirectly referred to it by quoting and referencing its terms and by alleging acts consistent with its terms. (*Compare* ECF No. 1 at PageID.4–6, 10, 11 *with* ECF No. 32-1 at PageID.440, 443–444.) Next, the Residential Custom Build Agreement, which the Ploegs do not deny signing, contains the following integration clause:

> This Contract and the Contract Documents incorporated in it is the entire agreement between the parties. No oral or written communication that occurred before the execution of this Contract will be considered part of the Agreement. This Contract may be modified only in writing signed by both the parties or by a written change order as provided in this Contract. This Contract will be governed by the laws of the state of Michigan.

(*Id.* at PageID.446.) The Ploegs do not allege that the contract identified in the complaint was a written modification of the Residential Custom Build Agreement adding Jenkins to the preexisting agreement covering the same subject matter. Moreover, to the extent the Ploegs claim an oral

6

agreement adding Jenkins, it would fail based on the integration clause. *See Zwiker v. Lake Superior State Univ.*, 340 Mich. App. 448, 476 (2022) ("When a contract contains an express integration or merger clause, it is conclusive evidence that the agreement is the entire agreement, and parol evidence is not admissible."). Such a claim would also fail because the Ploegs do not allege they provided JEL or Jenkins any consideration apart from the consideration set forth in the Residential Custom Build Agreement. *See Smith v. Rademacher*, No. 365495, 2024 WL 1229271, at *3 (Mich. Ct. App. Mar. 21, 2024) (concluding that the plaintiff could not establish the existence of a separate oral agreement because the plaintiff failed to show that she provided the defendant any consideration other than the purchase price required by the parties' written agreement). Finally, the Residential Custom Build Agreement is central not only to the Ploegs' breach of contract claim, but is also a key component of their MBTFA and conversion claims as it establishes that the funds the Ploegs provided to JEL were, in fact, trust funds for the construction of their house. Thus, because Jenkins was not a party to the Agreement, this claim is properly dismissed as to Defendant Jenkins.

      **B.**      **Fraud and Conversion (Counts III and V)**

Defendants contend that the fraud claim must be dismissed because the Ploegs failed to plead it as required by Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit has held that "particularity" requires a plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation marks omitted). In other words, a party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

The Ploegs do not dispute that their allegations set forth in their fraud count fall short of Rule 9(b)'s pleading requirements. In fact, those allegations are rather conclusory. (ECF No. 1 at PageID.13.) They contend, however, that their allegations in the MBTFA count supply the allegations necessary to establish their fraud claim because the MBTFA serves to prevent fraud in the construction industry. (ECF No. 37 at PageID.560.) This argument fails because "common-law fraud is a separate and distinct cause of action from statutory [MBTFA] fraud: one cannot be assumed merely from the supposed existence of the other." *Jerry Zabel Elec. Co. v. Stonecrest Bldg. Co.*, No. 320168, 2015 WL 4489225, at *4 (Mich. Ct. App. July 23, 2015) (citing *Rzepka v. Farm Estates, Inc.*, 83 Mich. App. 702, 711 (1978)); *cf. Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, Nos. 23-11310, 23-11342, 2024 WL 4507355, at *8–9, 13–15, 17 (E.D. Mich. Oct. 16, 2024) (dismissing the plaintiffs' fraud claim for failure to comply with Rule 9(b) but allowing their MBTFA claim to proceed). In other words, the Ploegs' MBTFA allegations, which also do not satisfy Rule 9(b)'s particularity requirement, cannot satisfy that the shortcomings of the common-law fraud claim.[3] Therefore, I recommend that the fraud claim be dismissed.

---

[3] The Ploegs' reliance on MBTFA cases discussing fraud is misplaced as it pertains to their common-law fraud claim because the elements of common law fraud differ from those for violation of the MBTFA. *Compare M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 26–27 (1998) (listing elements of common-law fraud as (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage), *with DiPonio Constr. Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 49 (2001)

Defendants further contend that the fraud and conversion claims should be dismissed because the Ploegs fail to allege that Defendants breached a duty separate from their duties under the parties' contract. Because the fraud claim is subject to dismissal on Rule 9(b) grounds, I need not address this argument as it pertains to that claim.

As for the conversion claim, under Michigan law, a party's actions may give rise to an action for breach of contract as well as an action in tort. *Hart v. Ludwig*, 347 Mich. 559, 562–63 (1956). Whether a tort action may be maintained when the claim is based upon a contractual obligation depends upon whether the defendant's conduct constituted a breach of duty separate and distinct from the breach of contract. *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 667-68 (1985). In other words, if a legal duty could not be enforced in the absence of the contract, a tort action may not be maintained. *Brewster*, 145 Mich. App. at 667. Thus, "[t]he question is whether the tort action would arise independent of the existence of the contract." *Allendale Mut. Ins. Co. v. Triple-S Techs., Inc.*, 851 F. Supp. 277, 280 (W.D. Mich. 1993).

Defendants contend that the Ploegs' statutory conversion claim must be dismissed because it is simply a contract claim recast as a tort claim. They argue that the Ploegs' allegation that Defendants failed to use the construction funds as required by the contract amounts to nothing more than nonperformance of a contract. (ECF No. 32 at PageID.432–34.) However, Defendants ignore that the conversion claim is premised upon Defendants' breach of separate and independent

---

("The prima facie elements of a civil cause of action brought under the [MBTFA] include (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project.").
.

9

duties as trustees under the MBTFA.[4] In *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608 (6th Cir. 2014), the Sixth Circuit noted that "the Trust Fund Act may apply by its own force and irrespective of a contract under certain circumstances." *Id.* at 613. In fact, the court observed that the MBTFA itself "does not require a contract for its application." *Id.* Apart from the language of the statute, the court noted that Michigan cases discussing the act supported its conclusion. *Id.* One such case, *DiPonio Construction Co. v. Rosati Masonry Co.*, 246 Mich. App. 43 (2001), observed that "it is clear that a contractor or subcontractor may remain in compliance with the terms of its construction contracts while simultaneously violating the builders' trust fund act." *Id.* at 53. Thus, regardless of the existence of a contract, a contractor may have separate and distinct duties as the trustee of construction funds under the MBTFA. More to the point, the Eastern District of Michigan found that the MBTFA provided a separate and distinct duty to support both common-law and statutory conversion claims in *International Industrial Contracting Corp. v. Sofir Italia s.r.l.*, No. 16-cv-13168, 2017 WL 3499899, at *9 (E.D. Mich. Aug. 16, 2017). The court distinguished *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760 (E.D. Mich. 2014), which Defendants cite here, on the basis that the plaintiffs in *Llewellyn-Jones* failed to identify a separate duty, whereas the plaintiffs in *International Industrial Contracting* sufficiently identified a separate duty arising under the MBTFA. *Id.*; *see also Windrush Inc. v. Vanpopering*, No. 315958, 2015 WL 5314831, at *7 (Mich. Ct. App. Sept. 10, 2015) (concluding "that an action for statutory conversion may be maintained for a violation of the MBTFA").

Even assuming, *arguendo*, that JEL's contractual duty is indistinguishable from the duty supporting the Ploegs' conversion claim (which I do not find), Jenkins's situation is different from

---

[4] The MBTFA is also known as the Michigan Building Contract Fund Act, or MBCFA. *See Miller v. Safford* (*In re Safford*), No. 19-30059, 2021 WL 5509264, at *4 n.1 (Bankr. E.D. Mich. Nov. 23, 2021).

that of JEL. That is, he cannot have it both ways—arguing that he owes no contractual duties to the Ploegs while maintaining that he has no separate duty to as to the allegedly converted funds. As the court observed in *Seither & Cherry Quad Cities*, above, "[i]f, as Moving Defendants argue, there is in fact no contractual obligation between the Moving Defendants and Plaintiffs, then Moving Defendants' duty to return those monies allegedly fraudulently given to them is a separate and distinct duty from OA's own contractual duty." 2024 WL 4507355, at * 16. The court noted, for example, that the plaintiffs' allegation that the defendants had a duty under the MBTFA to retain funds received from a third party in trust for the plaintiffs provided a separate and distinct duty from any contractual duty that might have existed. *Id.* On this score, I note that Defendants do not challenge the sufficiency of the Ploegs' claim against Jenkins under the MBTFA or argue that he is not a proper defendant for such a claim.

Last, Defendants' assertion that the Ploegs may not maintain a claim against Jenkins as an officer of JEL based on his breach of tort-based duties also lacks merit. The cases Defendants cite, *DBI Investments, LLC v. Blavin*, 617 F. App'x 374 (6th Cir. 2015), and *General Motors Corporation v. Alumi-Bunk, Inc.*, 482 Mich. 1080 (2008), stand for the proposition that a plaintiff may not avoid the economic loss doctrine by suing corporate officers individually. These cases are inapplicable here, as Defendants do not argue that the economic loss doctrine bars the conversion claim and, as the Ploegs note, they have sued Jenkins for conversion not as an officer of JEL, but as a trustee under the MBTFA of the funds the Ploegs provided.[5] Moreover, as previously noted,

---

[5] A recent unreported decision from the Michigan Court of Appeals cited by Defendants, *1-800 Bathtub, LLC v. ReBath, LLC*, No. 357932, 2024 WL 1689099, at *6–7 (Mich. Ct. App. Apr. 18, 2024), held that the economic loss doctrine did not bar the plaintiff's conversion claim because the contract at issue was for services, rather than goods, and conversion—an intentional tort— warranted an exception to application of the economic loss doctrine. *See Seither & Cherry Quad Cities*, 2024 WL 4507355, at *16 (finding that the economic loss doctrine did not bar the plaintiff's

11

the Ploegs may maintain a conversion claim against Jenkins based on his alleged violation of the MBTFA. Thus, the conversion claim should be allowed to proceed.

### C. Personal Liability of Jenkins

The Ploegs allege in Count IV that Jenkins, as an officer of JEL, is personally liable for the wrongs committed by JEL because he: (1) used JEL as a mere instrumentality to commit wrongs against them; (2) failed to maintain JEL's corporate form, mingled his personal funds with the corporation's funds, and made improper distributions from JEL, leaving it without assets to pay creditors; (3) signed all agreements and checks for JEL and managed its day-to-day operations as its sole officer; and (4) personally caused JEL to act unlawfully. (ECF No. 1 at PageID.14.)

Defendants contend that this count should be dismissed because it asserts an equitable remedy, not a cause of action. I agree. Count IV essentially seeks to pierce JEL's corporate veil. "Piercing the corporate veil is an equitable remedy." *S&S Innovations Corp. v. UUSI, LLC*, No. 1:18-cv-1377, 2021 WL 2070064, at *3 (W.D. Mich. May 24, 2021) (citing *DAGS II, LLC v. Huntington Nat'l Bank*, 616 F. App'x 830, 840 (6th Cir. 2015)); *see also Brennan v. National Action Fin. Servs., Inc.*, No. 12-cv-10551, 2012 WL 3888218, at *3 (E.D. Mich. Sept. 7, 2012) ("It is well established that piercing the corporate veil is not itself a cause of action."). "[A] party certainly needs to successfully pursue a cause of action before it can pursue a remedy." *Gallagher v. Persha*, 315 Mich. App. 647, 662 (2016). While a plaintiff may be able to assert a piercing claim "when a judgment already exists against a corporate entity[,]" *id.* at 665, the Ploegs do not allege that they have already obtained a judgment against JEL. *See Seither & Cherry Quad Cities*, 2024 WL 4507355, at *5 (dismissing the plaintiffs' alter ego/veil piercing claims based on their failure

---

conversion claims because the contract at issue did not involve the sale of goods); *International Indus. Contracting Corp.*, 2017 WL 3499899, at *9 (same).

to allege that they had a judgment against the corporate defendant but recognizing the possible future application of the remedy in the event that either plaintiff obtained a judgment against a corporate defendant). Accordingly, I recommend that this count be dismissed without prejudice.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant in part and deny in part** Defendants' motion for partial dismissal (ECF No. 31), dismissing the breach of contract claim (Count I) only as to Defendant Jenkins, dismissing the fraud claim (Count III) as to both Defendants, and dismissing the personal liability claim (Count IV) against Jenkins without prejudice. If the Court adopts this Report and Recommendation, the breach of contract claim against JEL and the MBTFA and statutory conversion claims will proceed.

Dated: January 6, 2025                          /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).